**ORIGINAL**

1  **LAW OFFICES OF CARLIN & BUCHSBAUM, LLP**
   GARY R. CARLIN, CSBN: 44945
2  *gary@carlinbuchsbaum.com*
   BRENT S. BUCHSBAUM, CSBN: 194816
3  *brent@carlinbuchsbaum.com*
   LAUREL N. HAAG, CSBN: 211279
4  *laurel@carlinbuchsbaum.com*
   555 East Ocean Blvd., Suite 818
5  Long Beach, California 90802
   Telephone: (562)432-8933
6  Facsimile:  (562)435-1656

7  Attorneys for Plaintiff JAMES BADAME, KEVIN RIEKE, JAMES KURRACK,
   ELIZABETH MITCHELL, FRANCIS LAU, ABOBAKER TUKHI, and CRAIG
8  SUNADA

9

10              IN THE UNITED STATES DISTRICT COURT

11     FOR THE CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

12

13  JAMES BADAME, KEVIN RIEKE,           Case No. SACV-11-00326 DOC (Ex)
    JAMES KURRACK, ELIZABETH
14  MITCHELL, FRANCIS LAU,               **FIRST AMENDED COMPLAINT**
    ABOBAKER TUKHI, and CRAIG            **FOR DAMAGES FOR:**
15  SUNADA,
                                         **(1) PROMISSORY ESTOPPEL;**
16              Plaintiffs;
                                         **(2) FRAUD IN THE**
17       vs.                             **INDUCEMENT;**

18  LOANGENIE, INC., a business entity;  **(3) NEGLIGENT**
    NEWPORT CAPITAL ASSET                **MISREPRESENTATION;**
19  MANAGEMENT GROUP, G.P., a
    business entity; JOHN VASQUEZ, an    **(4) BREACH OF ORAL**
20  individual; GARY HOYER, an individual; **CONTRACT;**
    and DOES 1 through 250, inclusive;
21                                       **(5) UNPAID WAGES IN**
                Defendants               **VIOLATION OF LABOR CODE**
22                                       **SECTION 200 ET SEQ.;**

23                                       **(6) VIOLATION OF THE FAIR**
                                         **LABOR STANDARDS ACTS;**
24
                                         **(7) BREACH OF WRITTEN**
25                                       **CONTRACT/THIRD PARTY**
                                         **BENEFICIARY; and**
26
                                         **(8) PROMISSORY FRAUD**
27
                                         [JURY TRIAL DEMANDED]
28

-1-

COMES NOW the Plaintiffs, (who hereinafter shall collectively be referred to as the "Plaintiffs" or individually as "BADAME", "RIEKE", "KURRACK", "MITCHELL", "LAU" "TUKHI", or "SUNADA"), who hereby respectfully allege, aver, and complain, as follows:

## INTRODUCTION

1. This is an action brought by the Plaintiffs pursuant to California statutory and decisional laws.

2. Plaintiffs allege that California statutory and decisional laws prohibit the conduct by Defendants herein alleged, and therefore Plaintiffs have an entitlement to monetary relief on the basis that Defendants violated such statutes and decisional law.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C §§1441(a) and 1446(a).

4. Venue in this Court is proper in that the causes of action herein alleged took place at the parties' business address located in the County of Orange, State of California.

## PARTIES

5. Plaintiff JAMES BADAME, at all times relevant herein mentioned, is and has been a resident of Los Angeles County, State of California.   Plaintiff

1    BADAME was President and Chief Executive Officer of Siena Acceptance

2    Corporation (SAC) until SAC was sold to Defendant LOANGENIE in April

3    2009, after which time Plaintiff BADAME was retained by Defendant

4    LOANGENIE, successor to SAC, as Chief Strategy Officer.

6.    Plaintiff KEVIN RIEKE, at all relevant times herein mentioned, is and has been a resident of Los Angeles County, State of California, and at all relevant times herein mentioned an employee of SAC.

7.    Plaintiff JAMES KURRACK, at all relevant times herein mentioned, is and has been a resident of Riverside County, State of California, and at all relevant times herein mentioned an employee of SAC.

8.    Plaintiff ELIZABETH MITCHELL, at all relevant times herein mentioned, is and has been a resident of San Bernardino County, State of California, and at all relevant times herein mentioned an employee of SAC.

9.    Plaintiff FRANCIS LAU, at all relevant times herein mentioned, is and has been a resident of Riverside County of the State of California, and at all relevant times herein mentioned an employee of SAC.

10.    Plaintiff ABOBAKER TUKHI, at all relevant times herein mentioned, is and has been a resident of Riverside County of the State of California, and at all relevant times herein mentioned an employee of SAC.

11.    Plaintiff CRAIG SUNADA, at all times relevant herein mentioned, is and has been a resident of San Bernardino County of the State of California, and at all relevant times herein mentioned an employee of SAC.

12. Plaintiffs allege that Defendant LOANGENIE, INC. (hereinafter sometimes referred to as "LG") at all times herein mentioned, is and has been a business entity with the capacity to sue and to be sued, and doing business, with a principal place of business located in City of Newport, County of Orange, State of California.

13. Plaintiffs allege that Defendant NEWPORT CAPITAL ASSET MANAGEMENT GROUP, G.P., (hereinafter sometimes referred to as "NCAMG") at all times herein mentioned, is and has been a business entity with the capacity to sue and to be sued, and doing business, with a principal place of business located in City of Newport Beach, County of Orange, State of California.

14. Plaintiffs allege that Defendant JOHN VASQUEZ (hereinafter sometimes referred to as "VASQUEZ") is and at all relevant times herein mentioned has been a resident of Orange County, State of California, and at all relevant times herein mentioned, the Chief Executive Officer and Chairman of the Board of Directors of Defendant LOANGENIE and co-founder/managing partner of Defendant NCAMG.

15. Plaintiffs allege that Defendant GARY HOYER ("hereinafter sometimes referred to as "HOYER") was at all relevant times herein mentioned, the President of Defendant LOANGENIE.   Plaintiffs are informed and believe that Defendant HOYER is a resident of City of Trenton, County of Mercer, State of New Jersey.  Plaintiffs are further informed and believe that at all times herein mentioned HOYER had sufficient minimum contacts with the State of California such that this Court's assertion of jurisdiction over Defendant HOYER does not offend traditional notions of fair play and substantial justice;

1    that Defendant HOYER committed the unlawful acts as alleged herein either
2    while physically present in the State of California or purposely directed his
3    activities at the State of California with knowledge that his conduct would
4    cause harm in this state.

16.   The true names and capacities of the Defendants named herein as DOES 1
through 250, inclusive, whether individual, corporate, partnership, association
or otherwise, are unknown to Plaintiffs who therefore sue these defendants by
such fictitious names.  Plaintiffs will request leave of court to amend this
Complaint to allege their true names and capacities at such time as they are
ascertained.

## FACTUAL ALLEGATIONS

17.   Plaintiffs worked for an automobile financing company called Siena
Acceptance Corporation ("SAC"), which was founded by Plaintiff BADAME
in or about 2005.  In or about March 2008, Plaintiff BADAME, was introduced
to Newport Capital Asset Management Group ("NCAMG") as a potential
equity partner in SAC.  Discussions ensued between management for the two
entities, and specifically the individual Plaintiffs and Defendants named herein,
and evolved into the beginning of a merger transaction with one of NCAMG's
partially owned companies, LoanGenie, Inc. (hereinafter sometimes referred to
as "LG") and SAC.

18.   Prior to LG's acquisition of SAC on or about April 15, 2009, Defendants
VASQUEZ, HOYER and NCAMG promised, assured and/or represented to
Plaintiffs that LG had sufficient assets to satisfactorily meet SAC's working
capital requirements, among them payroll expenses for employees, including

1   the salaries of Plaintiffs themselves.  For these reasons, Plaintiff BADAME on

2   behalf of SAC proceeded with the merger with LG, and did not look for other

3   opportunities.

4

5  19.   In or about July of 2008, per the express provisions of its Letter of Intent, LG,

6        by and through Defendants VASQUEZ and HOYER represented to Plaintiffs

7        that LG had $1.5 million that it was going to invest in SAC upon closing to

8        cover payroll for SAC employees.  For these reasons, Plaintiff BADAME

9        proceeded with the merger with LG, and did not look to other opportunities.

10      Yet, when the sale of SAC to LG closed in April of 2009, VASQUEZ informed

11      Plaintiff BADAME that LG never had $1.5 million available to invest into

12      SAC such that no funds were available for any purpose, including employee

13      payroll.

14

15  20.   In or about September of 2008, Defendant VASQUEZ represented to Plaintiff

16      BADAME that Defendant NCAMG, through its wholly owned fund Newport

17      Capital Special Situations Fund, LP ("NCSSF"), had an ownership interest in

18      eBank, and further assured him that by virtue of NCSSF's purported ownership

19      interest in this financial institution, eBank was prepared to and would apply a

20      portion of its large surplus of cash to the purchase of contract pools from SAC,

21      the proceeds of which would cover payroll expenses.  Based on Defendant

22      VASQUEZ' representations, Plaintiff BADAME proceeded with the merger

23      with LG, and did not look to other opportunities.  Following the merger,

24      Plaintiff BADAME learned that NCAMG, through NCSSF never had an

25      ownership interest in eBank.  Consequently, Plaintiffs are informed and believe

26      and thereon allege that Defendant VASQUEZ was aware at the time he made

27      the representation to Plaintiff BADAME that NCAMG by and through NCSSF

28      never had an ownership interest in eBank.

21. On or about April 15, 2009, pursuant to the written agreement covering the sale of SAC to LG, LG acquired the liabilities and obligations of SAC in accordance with the California Code including delayed compensation owed to each of the Plaintiffs and a loan amount in the amount of $81,775 owed to Plaintiff BADAME.

22. Following the sale of SAC to LG, Defendants promised, assured, and represented to Plaintiffs BADAME, RIEKE, KURRACK, MITCHELL, TUKHI and SUNADA that they would be provided their unpaid salary that was owed if they agreed to continue working in their same capacities and provided further assurances to these Plaintiffs that the rest of the employees on SAC's payroll would be compensated for the work they performed. However, Defendants never delivered on their promise and obligation to compensate Plaintiffs for services rendered, for deferred compensation, or for hours worked.

23. On or about April 24, 2009, managing member and Senior Vice President of LG, Mark Gaeta, via email, with a carbon copy to Defendants VASQUEZ and HOYER, advised Plaintiffs BADAME, RIEKE, KURRACK, MITCHELL, TUKHI and SUNADA that four months of back pay would be made the following Monday in conjunction with the distribution of stock award and stock incentive plans. However, this did not take place.

24. In or around May 2009, Defendants VASQUEZ and HOYER communicated to Plaintiffs BADAME, RIEKE, KURRACK, SUNADA and MITCHELL that Regional Acceptance Corporation ("RAC") intended to purchase the contract pool. Defendants VASQUEZ and HOYER requested the Plaintiffs, along with the rest of the SAC staff, continue working with the understanding that they

1   would receive compensation for their work once the contract pool was
2   purchased. As a result, while Plaintiffs continued to work, their earned salaries
3   were not being paid. Plaintiffs allege based on information and belief that
4   Defendants VASQUEZ and HOYER's statements that RAC intended to
5   purchase the contract pool was knowingly false at the time it was made.
6   Plaintiffs allege that the statement was knowingly false based on their
7   knowledge that Defendants failed to pay the necessary vendors in order for
8   RAC to conduct due diligence even though Defendants knew due diligence
9   was a prerequisite.   Plaintiffs further allege the statement was knowingly false
10  based on Plaintiffs knowledge that Defendants failed to provide RAC with
11  requested documentation necessary to solidify the sale. Plaintiffs allege on
12  information and belief that Defendants were aware at the time the statements
13  were made that due diligence and the requested information were required by
14  RAC in order to purchase the contract pool, which Defendants knew would not
15  take place.

16

17  25.   On or about July 8, 2009, Defendant VASQUEZ e-mailed Plaintiffs SUNADA,
18      RIEKE and KURRACK requesting that Plaintiffs continue working with the
19      promise of compensation for work performed.

20

21  26.   On or about July 9, 2009, Defendant VASQUEZ agreed to pay one month's
22      salary for Plaintiffs KURRACK, RIEKE, SUNADA and MITCHELL, which
23      never happened.

24

25  27.   On or about July 16, 2009, Defendant VASQUEZ specifically committed to
26      contributing $10,000 of his own money to cover some of Plaintiffs' payroll that
27      was owed. Within days of his commitment to pay $10,000, Defendant
28      VASQUEZ sent Plaintiffs a copy of a phony wire transfer order of $10,000 to

1   SAC's checking account despite knowing the funds were never sent to SAC.
2   Plaintiffs allege that Defendant VASQUEZ's statement was false at the time
3   the representation was made.

4

5   28.   On or about the end of July 2009, Defendant VASQUEZ e-mailed Plaintiffs
6         BADAME and KURRACK stating that eBank had committed $1 million in a
7         revolving line of credit to LG, which was to cover SAC's payroll.  Plaintiffs are
8         further informed and believe that at the time VASQUEZ made these
9         representations, VASQUEZ knew this statement was not true given his
10        knowledge that eBank had a cease and desist order, which escalated to a
11        Prompt Corrective Action from the Office of Thrift Supervision, which in
12        effect halted all business by eBank such that eBank could not have committed
13        $ million to LG.   One month later, eBank was closed by the OTS, which
14        Defendants should have been aware of based on their representations of their
15        alleged connection to eBank.  Further, Defendant VASQUEZ confirmed to
16        Plaintiffs BADAME and KURRACK that LG never received a $1 million
17        revolving line of credit from eBank.

18

19  29.   On July 26, 2009, Defendant VASQUEZ sent an email to Plaintiffs
20        KURRACK, RIEKE, and SUNADA acknowledging the outstanding deferred
21        payroll that was owed to the individuals, which would be distributed the
22        following week.  In that same e-mail, Defendant VASQUEZ informed
23        Plaintiffs KURRACK, RIEKE, and SUNADA that Defendant LG received an
24        offer to acquire a portion of the contract pool, which would cover some of the
25        owed wages.   The following week, Defendant VASQUEZ failed to distribute
26        any money to Plaintiffs KURRACK, RIEKE, and SUNADA.

27

28  30.   In or around end of July 2009, Defendants VASQUEZ and HOYER expressly

1    communicated to Plaintiffs BADAME, RIEKE, KURRACK, SUNADA and

2    MITCHELL in an e-mail that Westlake Financial intended to purchase the

3    entire contract pool.  Defendants VASQUEZ and HOYER requested the

4    Plaintiffs BADAME, RIEKE, KURRACK SUNADA and MITCHELL

5    continue working for the company with the understanding that they would get

6    paid their unpaid wages through the sale of the contract pool to Westlake.

7    However, Plaintiffs allege based on information and belief that the statement of

8    Westlake's intention to purchase the pool was false at the time it was made.

9    Plaintiffs allege that sometime after August 2009, the President of Westlake

10    communicated to Plaintiff BADAME that he had informed Defendants of

11    Westlake's interest in servicing the pool, and not purchasing the pool.

12    Additionally, Plaintiffs allege based on information and belief, and Defendants

13    experience in the business, that Defendants were aware that servicing the pool

14    would not have generated sufficient funds to cover the unpaid wages.

17  31.    On or about August 3, 2009, Defendant VASQUEZ e-mailed Plaintiff

18    SUNADA representing negotiations for the contract pool sale was about to

19    close, which would provide funds for payroll and requested the SAC staff

20    continue working with an understanding that they would receive compensation

21    once the pool sale closed.

23  32.    On or about August 5, 2009, Defendant VASUEZ, with a carbon copy to LG

24    management, including Defendant HOYER, e-mailed Plaintiffs KURRACK,

25    RIEKE, SUNADA and MITCHELL wherein VASQUEZ acknowledged

26    Defendants obligation to pay Plaintiffs unpaid salaries.

28  33.    On August 13, 2009, Mark Gaeta as a managing member of LG, and on behalf

of the LG Management Team, which included Defendants VASQUEZ and HOYER, expressly stated in a memorandum to Plaintiffs RIEKE, KURRACK, SUNADA and MITCHELL that the Defendants acknowledged liability for earned but unpaid salary from March 1, 2009 through August 13, 2009, and for accrued vacation.  GAETA also informed the Plaintiffs that payment of owed wages for unpaid salary and accrued vacation shall be made in full by on or before March 15, 2010.  Despite these specific promises, Defendants failed to pay any monies owed by March 15, 2010, and to date, has not paid any monies owed.

## FIRST CAUSE OF ACTION

### (Promissory Estoppel)

### (All Plaintiffs against All Defendants)

34.   The allegations of paragraphs 1 through 33, above, are re-alleged and incorporated herein by reference as though fully set forth herein.

35.   Following the sale of SAC, Defendants promised, assured and/or represented to Plaintiffs that Defendants would compensate Plaintiffs for employment services rendered.

36.   In so promising, assuring, and/or representing, Defendants knew or should have known that Plaintiffs would be reasonably induced to rely on Defendants' promises, assurances, and/or representations.

37.   Defendants, and each of them, made clear and definite promises, assurances, and representations to Plaintiffs, including but not limited to the following: (1) that Plaintiffs would be provided with unpaid wages, including delayed

compensation, and vacation pay; and (2) that Plaintiffs would be provided compensation if they agreed to continue working in their same capacities.

38.   In so promising, assuring, and/or representing, Defendants knew or should have known that Plaintiff would be reasonably induced to rely on Defendants' representations.

39.   Plaintiffs reasonably relied on Defendants' promises, assurances, and/or representations and thereby induced Plaintiffs to not look for other employment and to continue to work for LG without compensation.

40.   As a result of Defendants' failure to perform according to the promises, assurances, and/or representations described in more detail above, Plaintiffs have incurred damages, including but not limited to, attorneys' fees and interest thereon, in an amount according to proof at trial.

## SECOND CAUSE OF ACTION
### (Fraud In the Inducement)
### (Plaintiff BADAME Against All Defendants)

41.   The allegations of paragraphs 1 through 40, above, are re-alleged and incorporated herein by reference as though fully set forth herein.

42.   Plaintiff BADAME alleges that the Defendants named herein made several fraudulent representations to Plaintiff BADAME which Defendants knew were false at the time the representations were made including but not limited to: (1) that LG had $1.5 million to invest in SAC upon closing; (2) that NCAMG through NCSSF had an ownership interest in eBank; and (3) that Defendants

1   would cover SAC's employees payroll and Plaintiffs would be provided with
2   unpaid wages, including delayed compensation.

3

4   43.   Plaintiffs allege that these misrepresentations were made with the intent and to
5         induce the Plaintiff BADAME on behalf of SAC to enter into the agreement
6         with LG.

7

8   44.   Plaintiff BADAME actually relied on the Defendants' misrepresentations

9

10  45.   As a direct and legal result of Plaintiff BADAME's reasonable and foreseeable
11        reliance on Defendants' fraud as herein referenced, Plaintiff BADAME has
12        suffered and continues to suffer general, consequential, and special damages
13        including, but not limited to, unpaid salary, emotional distress, and attorneys'
14        fees, all to each of Plaintiff's damage in an amount according to proof at trial.

15

16  46.   Said actions by Defendants were fraudulent and justify the imposition of
17        punitive damages.  Defendants, and each of them, intentionally made
18        misrepresentations to Plaintiff BADAME which they knew were false, and in
19        doing so, Defendants, and each of them, acted maliciously, fraudulently, and
20        oppressively, with the wrongful intention of injuring Plaintiff BADAME, with
21        an evil and sinister purpose and/or conscious disregard for Plaintiffs' rights.
22        Based upon the foregoing, Plaintiff BADAME is entitled to recover punitive
23        damages from Defendants, and each of them, in an amount according to proof
24        at trial.

25

26  //

27  //

28  //

### THIRD CAUSE OF ACTION

### (Negligent Misrepresentation)

### (Plaintiffs BADAME, RIEKE, KURRACK, MITCHELL and SUNADA Against All Defendants)

47.    The allegations of paragraphs 1 through 46, above, are re-alleged and incorporated herein by reference as though fully set forth herein.

48.    At all times mentioned herein, Defendants, and each of them, owed Plaintiffs, and each of them, a duty of care to act like a reasonably prudent person would in the same position and under the same or similar circumstances.

49.    Plaintiffs allege that Defendants, and each of them, made misrepresentations to Plaintiffs which Defendants knew or reasonably should have known were false, including but not limited to, (1) that Defendant VASQUEZ had agreed and paid $10,000 of his own money to cover payroll and (2) that eBank had committed to $1 million in a revolving line of credit, to cover SAC's payroll.

50.    These statements were made without any reasonable ground for believing it to be true, and with the intent to induce Plaintiffs to rely on said representations. The Plaintiffs did in fact rely on the representations, which were justified.

51.    As a direct and legal result of Defendants' negligent misrepresentations as herein referenced, Plaintiffs have suffered and continue to suffer general, consequential, and special damages including, but not limited to, unpaid salary, as well as emotional distress damages, and attorneys' fees, all to each Plaintiff's damage in an amount according to proof at trial.

# FOURTH CAUSE OF ACTION

## (Breach of Oral Contract)

## (All Plaintiffs Against All Defendants)

52.  The allegations of paragraphs 1 through 51, above, are re-alleged and incorporated herein by reference as though fully set forth herein.

53.  Shortly after the sale of SAC to LG closed, Defendants communicated in clear and definite terms to pay all delayed compensation that was owed.  On multiple occasions following April 15, 2009, Defendants acknowledged liability and agreed to pay Plaintiffs unpaid wages, vacation pay and delayed compensation.

54.  Plaintiffs manifested assent to be bound to the terms of Defendants' offer by express words communicated to Defendants VASQUEZ and HOYER, and by continuing to provide employment services in accordance with the terms and conditions of their oral agreement with Defendants.

55.  Defendants, and each of them, breached their oral agreement with Plaintiffs by failing and refusing to perform in good faith their agreement to provide Plaintiffs with the delayed compensation, unpaid wages and vacation pay.

56.  Plaintiffs have performed all of the conditions, covenants, and promises required by the oral agreement entered into with Defendants.

57.  As a direct and legal result of the breach by Defendants, and each of them, in the obligations pursuant to the oral agreement, as herein referenced, Plaintiffs have suffered and continue to suffer general, consequential and special damages, including but not limited to, attorneys' fee, all to each Plaintiffs'

1    damage in an amount according to proof at trial.

2

3                    **FIFTH CAUSE OF ACTION**

4        **(Unpaid Wages in Violation of Labor Code Section 200 et seq.)**

5              **(All Plaintiffs Against All Defendants)**

6

7    58.   The allegations of paragraphs 1 through 57, above, are re-alleged and

8          incorporated herein by reference as though fully set forth herein.

9

10   59.   There exists, and at all times herein mentioned there existed, a unity of interest

11         and ownership between defendants VASQUEZ and HOYER and defendant

12         corporation, such that any individuality and separateness between defendants

13         VASQUEZ and HOYER and defendant corporation has ceased, and defendant

14         corporation is the alter ego of defendants VASQUEZ and HOYER.  At all

15         times herein mentioned, VASQUEZ was the co-founder and Principal of

16         Newport Capital Asset Management Group and was Chief Executive Officer

17         and Chairman of the Board of Directors of Defendant LOANGENIE.  At all

18         times herein mentioned, HOYER was the President of Defendant

19         LOANGENIE, one of NCAMG's wholly owned companies.

20

21   60.   Plaintiffs allege that the Defendants named herein, and each of them, failed to

22         pay Plaintiffs earned wages.

23

24   61.   Defendants, and each of them, are in violation of California statutory laws

25         prohibiting such conduct, including but not limited to, California Labor Code

26         Sections 200 et seq.

27

28   62.   As a result of the above-described unpaid earned wages, Plaintiffs are entitled

---

1  to their unpaid wages owing and, in addition, continuing wages through the
2  time this complaint is filed and until Defendants make all due payments.
3  Plaintiffs are also entitled to statutory penalties under Labor Code Section 203,
4  any damages owed in violation of Labor Code Section 206, and attorneys' fees
5  under California Labor Code Section 218.5.

6
7                           **SIXTH CAUSE OF ACTION**
8                    **(Violation of the Fair Labor Standards Act)**
9                    **(All Plaintiffs Against All Defendants)**
10
11  63.  The allegations of paragraphs 1 through 62, above, are re-alleged and
12       incorporated herein by reference as though fully set forth herein.
13
14  64.  Plaintiffs allege that the Defendants named herein, and each of them, failed to
15       pay Plaintiffs earned wages.
16
17  65.  At all times herein mentioned, Defendant VASQUEZ was an "employer"of
18       Plaintiffs within the meaning of 29 U.S.C. Section 203(d) in that VASQUEZ
19       exercised control over the terms and conditions of Plaintiffs' compensation for
20       services performed on behalf of LG and NCAMG by Plaintiffs that directly
21       furthered the interests of Defendants.
22
23  66.  At all times herein mentioned, Defendant HOYER was an "employer"of
24       Plaintiffs within the meaning of 29 U.S.C. Section 203(d) in that HOYER
25       exercised control over the terms and conditions of Plaintiffs' compensation for
26       services performed on behalf of LG and NCAMG by Plaintiffs that directly
27       furthered the interests of Defendants.
28

67. 29 U.S.C. Section 206(a) mandates that an employer compensate each of its employees who in any workweek is engaged in commerce or is employed by an enterprise engaged in commerce at a rate not less than the federal minimum wage.   At all times herein mentioned, the Plaintiffs named herein regularly and in furtherance of the performance of their employment duties used instrumentalities of interstate commerce, including but not limited to, the U.S. Mail.

68. Defendants failed to pay Plaintiffs unpaid salaries, and any wages for work performed by Plaintiffs.

69. Defendants' conduct above-described is in violation of 29 U.S.C. Section 206(a) (the FLSA).

70. As a result of Defendants failure to pay Plaintiffs at a rate not less than the federal minimum wage for services rendered by Plaintiffs, Plaintiffs are entitled to their unpaid wages owing, in addition to interest, and attorneys' fees.

### SEVENTH CAUSE OF ACTION
**(Breach of Written Contract/Third Party Beneficiary)**
**(All Plaintiffs Against All Defendants)**

71. The allegations of paragraphs 1 through 70, above, are re-alleged and incorporated herein by reference as though fully set forth herein.

72. On or about April 15, 2009, Plaintiff BADAME on behalf SAC entered into a written contract with LG, which was executed by Defendant HOYER.

73. Defendants intended for the Plaintiffs to benefit from the contract by and between LG and SAC.  As a result of the Agreement, LG assumed the obligations to pay each of the Plaintiffs delayed compensation, and Plaintiff BADAME for a loan amount in the amount of $81,775.

74. Defendants breached the agreement by failing to pay the delayed compensation owed to each of the Plaintiffs and the loan amount to BADAME.

75. SAC performed all of the conditions, covenants, and promises required by the agreement entered into with Defendants.

76. As a direct and legal result of the breach by Defendants, and each of them, in the obligations pursuant to the oral agreement, as herein referenced, Plaintiffs have suffered and continue to suffer general, consequential and special damages, including but not limited to, attorneys' fee, all to each Plaintiffs' damage in an amount according to proof at trial.

## **EIGHTH CAUSE OF ACTION**

### **(Promissory Fraud)**

**(Plaintiffs BADAME, RIEKE, KURRACK, MITCHELL and SUNADA Against All Defendants)**

77. The allegations of paragraphs 1 through 76, above, are re-alleged and incorporated herein by reference as though fully set forth herein.

78. Plaintiffs allege that the Defendants named herein made several promises that they did not intend to perform at the time the promises were made to Plaintiffs including but not limited to that (1) Defendants were going to sell the pool

1     contract to RAC; (2) Defendants were going to sell the pool contract to

2     Westlake Financial; and (3) Plaintiffs would be provided with delayed

3     compensation and unpaid wages.

4

5 79.     Plaintiffs allege based on information and belief that Defendants did not have

6     the intent to perform the promises at the time they were made based on the

7     following, including but not limited to: (1) Defendants were aware that RAC

8     would not purchase the pool contract without conducting due diligence and

9     reviewing requested documentation, which Defendants knew could not happen

10     at the time the promise to Plaintiffs was made; (2) Defendants were aware that

11     Westlake Financial had no interest in purchasing the pool contract at the time

12     the promise was made; and (3) Defendants knew that they were not selling the

13     pool contracts to RAC and Westlake Financial, eBank did not contribute $1

14     million, nor did Defendant VASQUEZ use his own money to cover some of the

15     SAC payroll.

16

17 80.     As a direct and legal result of Plaintiffs' reasonable and foreseeable reliance on

18     Defendants' fraud as herein referenced, Plaintiffs have suffered and continues

19     to suffer general, consequential, and special damages including, but not limited

20     to, unpaid salary, emotional distress, and attorneys' fees, all to each Plaintiff's

21     damage in an amount according to proof at trial.

22

23 81.     Said actions by Defendants were fraudulent and justify the imposition of

24     punitive damages since the fraud was against public policy.  Defendants, and

25     each of them, intentionally made misrepresentations to Plaintiffs which they

26     knew were false, and in doing so, Defendants, and each of them, acted

27     maliciously, fraudulently, and oppressively, with the wrongful intention of

28     injuring Plaintiffs, with an evil and sinister purpose and/or conscious disregard

for Plaintiffs' rights.  Based upon the foregoing, Plaintiffs are entitled to recover punitive damages from Defendants, and each of them, in an amount according to proof at trial.

## **PRAYER**

1.  For damages according to proof, including loss of earnings, both current and future;

2.  For interest on the amount of losses incurred in loss of earnings at the prevailing legal rate;

3.  For prejudgment interest on lost wages and benefits;

4.  For general damages, including, but not limited to, damages for *physical and emotional injuries*, according to proof;

5.  For other special damages according to proof;

6.  For specific performance of the oral contract and/or other equitable relief as the court deems just and proper;

7.  For punitive damages according to proof for Plaintiffs' second and eighth cause of action; and

//

//

8.    For such other and further relief as the court deems just and proper.

Dated: March 25, 2011          LAW OFFICES OF CARLIN &
BUCHSBAUM
A Limited Liability Partnership

By _____
Laurel N. Haag, Attorney for Plaintiffs
James Badame, Kevin Rieke, James Kurrack,
Elizabeth Mitchell, Francis Lau, Abobaker
Tukhi, and Craig Sunada

## DEMAND FOR JURY TRIAL

Plaintiffs hereby respectfully demand trial by jury on all claims pleaded herein.

Dated: March 25, 2011          LAW OFFICES OF CARLIN &
BUCHSBAUM
A Limited Liability Partnership

By _____
Laurel N. Haag, Attorney for Plaintiffs
James Badame, Kevin Rieke, James Kurrack,
Elizabeth Mitchell, Francis Lau, Abobaker
Tukhi, and Craig Sunada

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 555 East Ocean Blvd., Suite 818, Long Beach, California 90802.

    On March 28, 2011, I served the foregoing document described as:

## FIRST AMENDED COMPLAINT FOR DAMAGES

    The true copies thereof were enclosed in a sealed envelope and addressed as follows:

**Counsel for Defendants**
**Marc J. Schneider**
**mschneider@sycr.com**
**Laura Fleming**
**lfleming@sycr.com**
**Stephen L. Ram**
**sram@sycr.com**
**STRADLING YOCCA CARLSON & RAUTH, APC**
**660 Newport Center Drive, Suite 1600**
**Newport Beach, California 92660-6441**

**Facsimile: (949)725-4100**


\_\_\_\_   **(ELECTRONICALL**Y) I caused a true and correct copy thereof to be electronically filed using the Court's Electronic Court Filing ("ECF") System and service was completed by electronic means by transmittal of a Notice of Electronic Filing on the registered participants of the ECF System. I served those parties who are not registered participants of the ECF System as indicated below.

**XX**   **(BY MAIL)** I am readily familiar with my employer's practice for collection and processing of documents for mailing with the United States Postal Service and that practice is that the documents are deposited with the United States Postal Service with postage fully prepaid the same day as the day of collection in the ordinary course of business. On this date, I served the above interested parties following my employer's ordinary business practices.

\_\_\_\_   **(BY OVERNIGHT DELIVERY)** I caused such envelope to be delivered via overnight delivery (FedEx) addressed as indicated above for deposit and delivery by The Law Offices of Carlin & Buchsbaum, LLP, following ordinary business practices

\_\_\_\_   **(BY PERSONAL SERVICE)** I caused such envelope to be delivered by hand to the offices of the addressee.

| | |
|---|---|
| 1 | ___ |
| 2 | |
| 3 | |
| 4 | |
| 5 | **XX** |

**(BY FACSIMILE)** I caused such document to be served on all parties to this action via facsimile at the numbers indicated on the attached service list pursuant to California Rules of Court, Rule 2006. The facsimile machine I used complied with Rule 2003 and no error was reported by the machine. Pursuant to Rule 2006, I caused the machine to print a transmission record of the transmission, a copy of which is attached to this document.

**(FEDERAL)** I declare under penalty of perjury under the laws of the United States that the above is true and correct.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed, March 28, 2011, at Long Beach, California.

_Kimberly Kelly_
KIMBERLY KELLY, Declarant